Mr. Micco. May it please the court, counsel. Counselors, as I begin my argument today, I also wanted to very quickly recognize Madeline Baskfield, who was a volunteer law clerk in our office and was very helpful in putting together the briefing for Mr. Fortier. Ms. Baskfield has moved on to the Minnesota Court of Appeals where she clerks, but she has taken a couple of hours off and is present with us today. Very good. We are happy to have her assistance. As am I, Your Honor. Your Honors, there are three issues in Mr. Fortier's case which we briefed, two of which I'd like to address in this appeal. Mr. Fortier was convicted of production of child pornography in count one after a jury trial and was convicted in count two of possession of child pornography. He received in total a 25-year sentence. The first issue that I'd like to address before the court is whether there was sufficient evidence to convict Mr. Fortier of production of child pornography. Are you leaving the constitutionality question for the briefs? I think I ought to spend my time on other things, Your Honor. I think that's for the en banc court. And I'm happy to address the issue. Just clarifying the two, you're going to talk about that? Yes, Your Honor. That's, I think, appropriate. I'll be talking about sufficiency of the evidence and hopefully if time permits, also evidentiary errors. The sufficiency of the evidence is only with respect to count one and the evidentiary errors would, of course, require a new trial on, well, one or both counts. With respect to sufficiency of the evidence on count one, as the court's well aware, under 18 U.S.C. 2255, in order to prove by virtue of the statute, or in order to convict by purpose of producing child pornography. Now that suggests a specific intent. I mean, that's a classic specific intent language, but when must that specific intent be formed? Your Honor, courts have been all over the map on that issue. Now, if the court were to follow the approach that was recommended by dissenting Judge Williams in the Torres case out of the D.C. Circuit, that specific intent must be formed before any type of recording or production. But our cases seem to suggest that it could be, it certainly can't be later, but it could be coexistent with the sexual, at the same time as the sexual encounter. Isn't that true? I think that that's consistent with a read of Rapplinger. That's also what Judge Schiltz found in deciding some jury instruction issues on this case, on this matter before the district court. So then, in addressing this issue, we can pretty much consider any evidence that was presented by the government up until the sexual, up through the sexual encounter, but not after, or at least the beginning of the sexual encounter. I suppose that's right, Your Honor. And by the government's view, it seems that they would also believe that evidence that kind of post-dates the sexual encounter would also be relevant to the issue of intent. Well, it could. I mean, it could tell you what his intent was at the time, but I don't think, I don't think, to the extent they're arguing that he formed the intent later, I don't think that that works within our case law. So there's a little bit of a distinction there. And that's exactly the point on sufficiency of the evidence, because the evidence here relies almost exclusively on the videos themselves. I mean, there's some evidence that, and the Court's familiar with the record, there was a party that Mr. Fortier had where he invited these two young women, everybody had alcohol, everybody engaged in sexual encounters, and then there were videos. Now, before the District Court, the government relied heavily on the videos themselves, played them for the jury, and then relies on appeal on evidence of what happened after the encounter. I think that could be probative. So my understanding of the record is that the videos focused in and zoomed in and out and moved around during the course of the encounter, and also that there was some pointing, there was some evidence about some pointing that happened at a particular time. That can be evidence of the intent to record. I mean, obviously there needs to probably be more, and I think there was more here, but don't you think that's probative of what his intent was before? The videos themselves? The way he recorded those videos. The framing of the videos? Yes. In the proper case, I believe that it's true that the production itself may be probative of what the intent is. I don't believe that this is the case. The court has the videos before it. I'm aware that the clerk's office had asked for the videos to be sent. They're very short videos. They're not of high quality. They're shot on a phone, which is in distinction to how many of these cases had come up where there is a finding of specific intent, rappling, or where it involves a Polaroid and some evidence of maybe props that are used during the encounter. Other cases where there's a person, where there's a tripod, something like this. These are videos. They're very short videos recorded on an iPhone. The government argued before the jury that in the video that's identified, I think is Exhibit 1C, that there's pointing. The video speaks for itself. I'm not sure that it's accurate. Let me follow up. My understanding is there's also recording of, I guess, them playing darts. Some of the girls were nude while they were playing darts. And I know you challenge this. There's also evidence of him taping his ex-girlfriend AR and sexual acts. All of that seems to indicate or bear on his intent to bring these minors in and perform a sexual act and record them. The jury could infer that that was his intent going into the sexual encounter. Your Honor, let me address those in turn. First, with respect to the videos of the young women playing darts, the government indicates in its brief that those were the only other videos that were before the jury. But the fact of it was that the jury was also aware that there had been videos taken from Mr. Fortier's phone that night, which had since been deleted. I believe it was Officer Hansen who testified that based on his forensic review, he knew that there were some videos that were no longer there. So it isn't quite as clear as Your Honor suggesting where all we have that night is production of either child pornography or pictures of young women who were without clothes on. And with respect to Mr. Fortier's girlfriend, AR, and the evidence that Mr. Fortier recorded some encounters with her, I'll address that in two ways. First of all, as I referenced in our brief, the notion that recording between consenting adults of a sexual encounter is probative of an intent to produce child pornography, I think is just too thin a read. I tend to agree with you, but here's the catch. Your client's defense was, I was using my flashlight function on, and I didn't know I was recording. And so the fact that he has recorded sexual encounters before shows an absence of defense, I think. Possibly, Your Honor, but really the evidence then should have just been that he knows how to record. Why isn't it relevant that he's a collector? I'm sorry, Your Honor? Well, the fact that he's a collector of these kinds of videos is, I mean, that he did it with two adults and recorded and collected them, and then he did it with two children and collected them. If the purpose was to collect, he committed the child porn offense. The fact that the other victims collected were adults doesn't destroy the materiality or probativeness of the collector evidence, does it? Your Honor, and that notion is why we think, first of all, we do believe that there's a difference between a collector of child pornography and somebody who engages in the collection of typical pornography. That's at least what Mr. Fortier's counsel argued at trial, that he had a massive... One's legal and one's not. Precisely. So it's fairly different. Precisely. And from a 404B standpoint... But we're talking about the intent. That's right, Your Honor. We are talking about intent, but it's also quite relevant to 404B, because this is evidence that could very easily be misconstrued by the jury, not to go to the issue of intent, but really to go to the issue of what kind of a person is Mr. Fortier. So carefully circumscribed by the district court. It was... Judge Schultz was careful in how he... With a cautionary instruction and you can't see the videos, you know, you just get the brief testimony by AR and so forth. There was brief testimony by AR, but there was also a description of the evidence rather than kind of playing of what the videos entailed in a manner which we think kind of inflated the evidence before the jury and actually inflamed the jury with respect to some of the evidence of what was child pornography, what was something called child erotica, what was age difficult. But of course, unfortunately for defendants, if there is 404B probativeness, the fact that the evidence, even when circumscribed, was prejudicial, does not make it unfairly prejudicial. But it does become unfairly prejudicial under Old Chief when that evidence so overwhelms the jury on issues that the government itself says it already had sufficient evidence on. The government's brief and the government's presentation at trial was rife with discussion that wasn't just puffing. It thought it had plenty of evidence about... But you're here saying they didn't. That's true, on the sufficiency evidence. And the fact, I suppose, there's not really supposed to be any symmetry in criminal law. The criminal defendant has the rights and the government generally does not. But I suppose that goes both ways. The government can't argue that the evidence is overwhelming and sufficient without the 404B evidence or the evidence that we've challenged. And then, on the other hand, claim that that evidence was critical to a conviction. I see I'm very close to getting into my rebuttal time. I'd like to reserve three minutes for rebuttal. So unless there are further questions from the court, I'll yield my time. Thank you. Ms. Middlecamp? May it please the court? My name is Lindsay Middlecamp. I was one of the trial attorneys responsible for trying Mr. Fortier's case in January 2018. Since Mr. Micco has addressed both issues, I will do the same. I'd like to start with the sufficiency of the evidence. First, address the case law standard that Judge Strass has raised as to when intent to produce should be formed under the case law. And then talk a bit more about the record. And then, time allowing, I'll move on to the overlapping 404B and prejudice analysis. The court asked the appropriate question, when does the intent to produce need to apply? On a practical level and under the case law, the answer is clearly at any point when the decision to produce arises, not measured by when did the sexual encounter arise. This is for several reasons. Under basic consent standards, it's analogous to any sexual assault or sexual exploitation case. A sexual encounter is not a single moment in time, but it is a series of events at which choices can be made. So, consent can be withdrawn, at which point the next set of conduct becomes non-consensual. Or analogously here in production, pre-production conduct can occur, but then when you form the intent to create a visual depiction of the next conduct that follows, you have formed the requisite intent. So, the timing then would be up until the time you produce the video, right? It could be. It could be. It could be a case like in Rapplinger where if even before you start the sexual encounter, you buy a Polaroid camera, make sure you have film, then it would have occurred far before. But to Mr. Fortier's argument… Tying this into the point in the brief that you only have to convict on one video, in other words, if the intent is formed after the third but before the fourth, you're arguing that that's… Yes, Your Honor. So, several places in the record the court can find that authority. First, the parties had an opportunity at the pretrial conference in discussing the verdict form and instructions how that issue should be put to the jury. Count 1 had four different videos, all comprising Count 1, and the jury was instructed on unanimity as to only one of the videos. So, if it at least unanimously found that, for instance, 1B had the requisite intent, that was sufficient to carry Count 1. The parties had an opportunity to discuss that issue and ultimately agreed on the instruction that would be given and the verdict form, which said they had to find unanimity in regard to at least 1A, 1B, 1C, or 1D in order to support the charge. So, theoretically speaking, I don't remember what the testimony said about which video had this, but the pointing and the zooming in and out and the moving of the camera, even if that happened in videos 1, 2, or 3, that could be used to talk about the intent or used to support the intent on the fourth video, the last video. Absolutely, Your Honor. And if the court were at a point where it wanted to evaluate the record on a video-by-video basis, the fact that videos 1A and 1B, involving Minor 1, and 1C and 1D, involving Minor 2, are in fact clips in time. So, in other words, Mr. Fortier started recording 1A, stopped the recording, then started recording 1B, changed positions, directed Minor 1 as if a model, told her how to move, told her how to angle herself, stopped that video, went around the house to different locations. There was testimony, even a floor plan of his home, to show how many rooms he had to go around with his cell phone to then follow Minor 2 into a bedroom where she was passed out, choose to turn on his cell phone to start recording 1C, remove her tampon, then start recording, when he was already penetrating her, 1D. And so there were all these different moments in time in the record, and I apologize for being graphic, but that was emphasized for the jury on how this, and frankly at the sentencing, Judge Schultz got it right. The preposterous, as he said, and not credible testimony that Mr. Fortier was simply using a flashlight feature, it simply didn't line up with the actual record videos. And couldn't evidence regarding cataloging and storage also show intent for purposes of production? Yes, Your Honor, and that's why the evidence presented by Officer Dale Hanson was so important to show forensically. These were not just videos that were accidentally recorded, as Mr. Fortier testified, a nice surprise the next morning, and that was the end of it. Fortier himself testified and agreed, and Dale Hanson set forth in his testimony, that the videos were promptly deleted off his iPhone, because Mr. Fortier was going to hang out with his niece and nephew that day, and didn't want embarrassing videos on his phone. But instead of deleting them all together and feeling bad, he emailed some to himself, he installed some in a hidden calculator application where he had other curated pornography of his favorite clips that were homemade. He transferred them both onto the laptop and then later onto an SD card, where the only other materials were other items of child pornography or related forms of non-adult pornography. So absolutely, the court has it right that in terms of the evidence the government presented that the jury heard, it essentially fell into three categories. The first was the conduct that night. What do his actions clearly show? The court asked about the DART videos, and I can talk about that in a moment. The second set of evidence or category of evidence, what did he do after the fact? He curated it. He added it to essentially trophy cases of his other homemade pornography, involving either young adults or other people who had come to his home. Is the Rapplinger line of cases clear that producing for yourself is sufficient to violate the production statute? Your Honor, I believe both... As opposed to producing for a file-sharing program. Yes, Your Honor. I believe if Rapplinger doesn't address that itself, certainly the statute's distinctions between production and distribution answers that question for us. Simply producing for yourself is sufficient. Now, there could be a question of if you produced it and immediately deleted it and it had been inadvertent, that might all go to purpose. But here, since there was clear forensic evidence by Dale Hanson that these particular files produced underlying count one had been not only saved but actually re-accessed and viewed by Mr. Fortier on other occasions, on other devices, certainly resolves any kind of ambiguity as to whether there was intent to produce and whether that fits within the statute. I will also note that the two other cases that the defense has relied on in their briefs, so we have Rapplinger, which is this circuit's main authority, but then the defense also notes Torres and the Siroy case, and both of those weigh in favor of the government's position as well. In Torres, the court noted that the actual angling and posing of the photos was highly probative to the intent, basically because that involved a photo where the defendant's hand had been angling the minor's penis towards the camera to get a better view was probative. Here, videos 1A and 1B clearly show Scott Fortier angling the minor and moving her position when the actual sexual conduct was obstructing the close-up view of genitals. Siroy emphasizes that criminal law applies to more than just the single-minded. Just because you moved someone across state lines to have sex with a minor and you also photographed them doesn't make you any less a child pornographer, just because you're also a pedophile. And so the same analysis across all those cases should govern this case here, and the district court properly found that the evidence that was relevant to intent was admissible and the jury had more than sufficient evidence. I would also note just how high a standard this is to overturn a jury verdict on sufficiency of the evidence and that the defense has far and away missed that standard. The court asked a question about the DART videos, and I believe Mr. Micco mentioned the deleted videos. That was additional sufficient ample, rather, evidence of what Mr. Fortier's intent was. And the minors were naked, am I understanding that right, during the DART video? Topless, yes. So part of what that evidence was offered to show is that the actions of that evening, despite Mr. Fortier taking his phone through every room of the house, the only images he created were of child nudity or child sex. And to the extent some were deleted, that testimony, contrary to how defense has characterized it, came in to show curation. We were very careful to make sure that Dale Hanson did not speculate what was in those files, emphasize that it could have simply been a blurry shot, accidentally angled at a wall, you know, glared by light. It did not raise the implication that it included child pornography. Instead, the implication was at some point, either that night or after, Mr. Fortier had a range of photos or videos, and he deleted three of those files, deciding they weren't worth keeping, which goes to his intent that he did want to keep the other ones, either because they were better shots or the content he had intended to create. On the admissibility standards and the evidentiary issues here, Mr. Fortier has raised several objections now that he did not raise or preserve at trial, and, in fact, affirmatively waived at trial. So under plain error review? Pardon, Your Honor? So we're under plain error review? On two of them, it's plain error review. As to the noticed 404B materials, that would be an abuse of discretion review. Under either category, because of the strength of the record, this Court can find that any evidentiary error, if any occurred, abuse of discretion or error, was plainly harmless. Here, having just talked about the sufficiency of the evidence, I'll talk about why that collection of other homemade pornography, whether it was involving AR, other pornography, or non-pornography but other related images, went to the critical element of intent and were not offered by the government to prove his general character or proclivities. What was not shown, and Mr. Mikko has argued that it was actually raising a worse specter for the jury to not show them all of the related content, but in fact the government and the district court concluded, even in advance of the 404B motion practice, that the more restrained, less prejudicial, and most relevant presentation would be very sanitized descriptions by Officer Dale Hansen and by AR. Mr. Fortier himself took the stand and admitted he had collected images of breasts, including minors and camp counselors from Circle R Ranch, in what he called a boob album. He had recorded individuals at his home, including minors, naked or in sexual activity using surveillance cameras. He had recorded individuals without their knowledge in states of undress and that it was all part of a collection that he had. When Dale Hansen was describing what was found, he used sanitized language to simply emphasize that, much like the videos in Count 1 and some of the videos found supporting the possession charge in Count 2, Mr. Fortier's other collection had an emphasis on close-up shots of genitals or close-up shots of breasts, that very few had images of the faces, very few were simply social pictures of someone who happened to have their shirt off, that these were intentionally curated for a certain aesthetic preference. And the government was clear in its presentation that it was not being offered, and in fact reemphasized at closing, if you read the transcript that discusses the bulk of evidence, the government again emphasized, we're not asking you to consider this other pornography collection just to think that he's a bad guy. We're asking you to look at this collection as consistent with intent of a person who chooses to curate and chooses to amass a very specific type of pornography that is very consistent with both the charged conduct in Count 1 and the charged files in Count 2. On the issue of Dale Hansen's references to child erotica and whether those are prejudicial or were prejudicial or should have been excluded, the government in its trial brief many days before trial began indicated that Dale Hansen's testimony would testify on the contents of what was found on Mr. Fortier's devices. The way that Dale Hansen did that testimony, and the court can look at exhibits, I believe 51 and 52, perhaps a few beyond, rather than simply get on the stand and summarize verbally,  he had actually taken screenshots step-by-step. If you click on this picture of this folder on the desktop, it results in this folder of items. And the jury was then able to see a list of files but not the images themselves because, again, the government did not seek to inundate the jury with prejudicial images. But when looking at that file list, because it included both charged child pornography and child erotica and age-difficult-to-determine files, Dale Hansen clarified, this entire list the jury is seeing, that's not all child porn. There are other types of files in this. So he was essentially making his presentation less prejudicial than if he had allowed the jury to simply assume it was all child pornography. Moreover, it showed its intent, again, to possess, not just to possess and produce count one, but the possession charges. Because the files on that micro SD card only included, and you can see how the government examined him on direct, what did that SD card include? Did you find any adult pornography or any pornography that clearly only included adults? And so to the extent he needed to clarify, it wasn't all child pornography. There were these other categories that were found. But this was a device that had been curated to simply store things other than adult pornography. It went directly to the issue of knowledge, intent, and what Mr. Fortier's actual curation included. And ultimately, the defense did not ask for a curative instruction on that testimony or on the other issues, even though the district court had offered at the beginning on all 404B material, if you determine that you want a curative instruction, let me know and I will give one. And the defense did not. So unless the court has any other questions, the government will rest on the record and brief and ask this court to affirm the verdict on both counts. Very good. Thank you. Thank you. Mr. Mitchell, do you have some time? There we are. As the court's considering the sufficiency of the evidence issue, it is important to recall how we got to where we are with respect to what the elements of the offense are. Under 2251A, the requirement is that the minor be used for the purpose, in the singular, for the purpose of creating evidence. But under Rapplinger, it doesn't have to be the sole purpose, does it? That's right, Your Honor, and that's my point. Under Rapplinger, it doesn't have to be the sole purpose. Rapplinger followed a couple of other circuits in which Ms. Middlecamp spoke to the Torres case and the Saroy case where the courts determined that proof could be made that the use of the minor could, for the purpose of creating a depiction of child pornography, could be a dominant motive. And, I mean, there's some linguistic gymnastics to find that there are more than one dominant motive. It's not consistent with the traditional definition of dominant, which would require something to be prioritized over all else. So the fact that, and I'm not here challenging that definition, obviously it is what it is under Rapplinger, but it's important to keep that in mind when we think about the sufficiency of the evidence and specific intent here. Because in a specific intent case, it's the rare, rare case where the video itself will demonstrate enough to get over the sufficiency of the evidence bar. And here the court has referenced a few other things that might help the government to get over that bar, one of which was the curation. Curation has to do mostly with possession, knowing possession of child pornography. It stretches too far. And I know of no case that would say that curation itself would also be indicative of a specific intent to produce child pornography. Well, curation would particularly be relevant, though, if some of them were ones that he had done himself, like the stuff with AR, right? Because then that would show that I'm producing, or, you know, Mr. Fortier is producing in order to make it part of his collection. Perhaps, Your Honor. My point is simply that to find that that creates sufficient evidence or meets the bar of sufficient evidence is an extension of the cases that I've reviewed on this issue. It seems to me it's closer to there was a Fourth Circuit case where it gets very close to just being limited evidence. There was a Fourth Circuit case, Palomino-Coronado, in which the court found that the video or the depiction itself was not enough to demonstrate specific intent. I think curation falls kind of in that line. Again, with the 404B and 403 evidentiary errors, I simply note that it is difficult for the government to stand before this court and argue that Mr. Fortier's defense was preposterous and the evidence was overwhelming and not recognized under old chief that might be a problem. I'm out of time. Thank you. Thank you, counsel.